UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

RYAN CRAM; ERICA DRAKE; LAURA
BAILEY; RICHARD CAMPBELL;
KATHERINE MANGLONA; DEANNE
MURFIN; CORI STEPHENS; and
KATHLEEN TRYON,
as individuals and representatives of
the respective requested classes,

                   Plaintiffs,

    v.

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 503,
OREGON PUBLIC EMPLOYEES UNION,
a labor organization; and KATY COBA, in
her official capacity as Director of the
Oregon Department of Administrative
Services,

                   Defendants.

Case No. 6:20-cv-00544-MK

**OPINION AND
ORDER**

_____

**KASUBHAI**, United States Magistrate Judge:

       Plaintiffs filed this civil rights action against Service Employees International Union,

Local 503 ("SEIU"), and Katy Coba in her official capacity as Director of the Oregon

Department of Administrative Services ("Director Coba"; collectively "Defendants"). *See* First

Am. Compl., ECF No. 42 ("FAC"). Plaintiffs allege Defendants, without their consent, collected

certain union assessments in violation of the First Amendment of the U.S. Constitution in the

wake of the Supreme Court's decision in *Janus v. AFSCME*, 138 S.Ct. 2448 (2018). *See* Compl., ECF No. 1 (citing 42 U.S.C. § 1983). "*Janus* was the culmination of a series of cases that expressed skepticism about the core holding of *Abood v. Detroit Board of Education*—namely, that public employees could be required to pay agency fees as a condition of their employment without violating the First Amendment." *Cook v. Brown*, 364 F. Supp. 3d 1184, 1186 (D. Or. 2019) (detailing the Supreme Court's path to ultimately overruling *Abood*).

The Court recommended dismissing Defendants partial motions to dismiss the original Complaint as to the prospective claims for relief (ECF Nos. 20, 22) with leave to amend, which was subsequently adopted by United States District Judge Michael McShane. *See* ECF Nos. 35, 37. After Plaintiffs filed an amended complaint, the parties agreed to a briefing schedule for their respective cross-motions for summary judgment, which the Court heard oral argument on in December 2021. ECF Nos. 39, 44, 50, 55. For the reasons below, SEIU's motion for summary judgment and Director Coba's motion for summary judgment are GRANTED; Plaintiffs' motion for summary judgment is DENIED.[1]

## BACKGROUND

The following facts are taken directly from the jointly submitted Statement of Stipulated Undisputed Facts for cross-motions for summary judgment. ECF No. 43.

1.      SEIU 503 is a public-sector labor union that represents certain bargaining units of Oregon public employees. *See* FAC ¶¶ 1, 11, ECF No. 42.

2.      At all times relevant to this lawsuit, membership in SEIU 503 was not a condition of public employment in Oregon.

---

[1] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 49.

3.      By filling out and executing a membership application and joining SEIU 503 as a member, public employees become "active members" of SEIU 503 and obtain certain membership rights in SEIU 503 not afforded to non-members. Such membership rights of "active members" include the right to vote on the employment contract applicable to the bargaining unit, to nominate candidates for union office, to vote in union elections and referendums, to hold office at all levels of the union, to vote on amendments to the Constitution and Bylaws for SEIU 503 and for their sub-local union, to vote on changes to SEIU 503's organizational structure, to file charges under SEIU 503's internal disciplinary procedure, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings. "Active members" also are eligible to enjoy various "members-only" benefits that are not available to non-members, including access to life, disability, legal, and other insurance offers, scholarship opportunities, mortgage programs, and discounts on travel, lodging, theme parks, and restaurants where offered. During their active membership in SEIU 503, many of the Plaintiffs took advantage of these membership rights and benefits, including by obtaining legal insurance; by voting on contract ratification, on constitution and bylaws amendments, and on changes to SEIU 503's organizational structure; and by filing internal union disciplinary charges.

4.      In 1998, SEIU 503's General Council, the highest governing body of the union, which includes nearly 300 democratically-elected member representatives, passed a resolution to empower the union's Board of Directors, in consultation with local and district leadership, to put to a vote of union members whether to implement an ongoing monthly assessment dedicated to promoting and defending the interests of the membership through public issue campaigns and ballot measures. *See* Exhibit 1. On November 25, 1999, a letter was sent by SEIU 503's Board of

Directors to SEIU 503's members, announcing a referendum vote on whether to implement a

$2.75 per month assessment for that purpose. *See id.* The members voted 60 percent to 40

percent to approve implementation of the $2.75 per month assessment on, inter alia, all members

of SEIU 503. *See* Exhibit 2. This assessment funds the SEIU 503 "Issues Fund."

        5.      At that time, signatory employers began deducting $2.75 per month from SEIU

503 members' wages in addition to dues and any other assessments.

        6.      At all times relevant to this lawsuit, the Oregon Department of Administrative

Services processed payroll deductions of union dues from SEIU 503 members who were state

employees and had signed membership applications with dues authorizations, pursuant to Article

10, Sections 15(a) and (b) of the collective bargaining agreement ("CBA") between SEIU 503

and the Oregon Department of Administrative Services.

        7.      A true and correct copy of Article 10, Sections 15(a) and (b) is attached to the

joint stipulation as Exhibit 3.

        8.      SEIU 503 members pay membership dues by automatic payroll deduction. Those

payments include two components that are broken out as separate line items on SEIU 503

members' paystubs. One of those components, basic dues, appears as a line item deduction on

SEIU 503 members' paystubs entitled "SEIU."  Another component, the $2.75 dues assessment

for the SEIU 503 "Issues Fund," appears on SEIU 503 members' paystubs as a separate line item

deduction entitled "SEIU ISSUES."  A true and correct copy of an example of such a paystub is

attached to the joint stipulation as Exhibit 4.

        9.      SEIU 503 membership cards include a section in which a union member may sign

up for a voluntary political contribution titled "Voluntary SEIU Local 503 Citizen Action for

Political Education (CAPE)."  The amount of this political contribution can be determined by the

member, and it can be canceled separately from union membership. This contribution is separate

from, and in addition to, the ISSUES assessment. The difference between CAPE and the Issues

Fund is that CAPE is a political action committee that supports candidates in elections, whereas

the Issues Fund is not a political action committee and does not support candidates, but rather

supports public issue campaigns and ballot measures.

## PLAINTIFF LAURA BAILEY

10.     Plaintiff Laura Bailey is employed by the Oregon Youth Authority in a bargaining

unit represented by SEIU 503. FAC ¶26.

11.     Bailey signed an SEIU 503 membership application on September 11, 2017. The

membership application contains the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor
> entity) as my desired collective bargaining agent. I also hereby
> authorize my employer to deduct from my wages all Union dues
> and other fees or assessments as shall be certified by SEIU Local
> 503, OPEU (or any successor Union entity) and to remit those
> amounts to such Union. This authorization/delegation is
> unconditional, made in consideration for the cost of representation
> and other actions in my behalf by the Union and is made
> irrespective of my membership in the Union. This authorization is
> irrevocable for a period of one year from the date of execution and
> from year to year thereafter unless not less than thirty (30) and not
> more than forty-five (45) days prior to the end of any annual period
> or the termination of the contract between my employer and the
> Union, whichever occurs first, I notify the Union and my employer
> in writing, with my valid signature, of my desire to revoke this
> authorization. Union dues may be tax deductible as a work related
> expense subject to Federal and/or State tax rules.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 5. No

additional information was included to explain what "assessments" would be used for or to

explain that an assessment would be used for political purposes. Neither SEIU 503 nor Bailey

has any record of Bailey requesting such information or inquiring as to the purposes for which the assessments would be used.

12.    After signing the membership application, Bailey was treated as an SEIU 503 member and received the rights and benefits of membership.

13.    Bailey mailed SEIU 503 a form dated November 1, 2018 resigning her union membership and objecting to the payment of any Union dues or fees. SEIU 503 received that letter on November 6, 2018. A true and correct copy of that document is attached to the joint stipulation as Exhibit 6.

14.    SEIU 503 mailed Bailey a letter dated November 15, 2018 responding to her November 1, 2018 letter confirming that her resignation was deemed effective upon receipt of her letter. Local 503's letter also stated:

> We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization. (We have included a copy of your authorization for your reference). Accordingly, we shall hold the cancellation request on file until the first date cancellation would be appropriate. In your case, that date is July 28. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 7.

15.    Membership dues, including the $2.75 "SEIU ISSUES" assessment, continued to be deducted for Bailey until July 1, 2019. The final deduction was made from the paycheck for the pay period ending June 30, 2019.

16.    A true and correct copy of a print-out from SEIU 503's records and files, showing Bailey's dues history from her resignation of membership on November 6, 2018 through her last deduction for the pay period ending June 30, 2019, is attached to the joint stipulation as Exhibit 8.

## PLAINTIFF RICHARD CAMPBELL

17.     Plaintiff Richard Campbell is employed by the Oregon Department of

Administrative Services in a bargaining unit represented by SEIU 503. FAC ¶30.

18.     Campbell signed an SEIU 503 membership application on May 23, 2016. A true

and correct copy of that document is attached to the joint stipulation as Exhibit 9. No additional

information was included to explain what "assessments" would be used for or to explain that an

assessment would be used for political purposes. Campbell did not request any such information

or inquire as to the purposes for which the assessments would be used.

19.     Campbell signed another SEIU 503 membership application on September 10,

2017. A true and correct copy of that document is attached to the joint stipulation as Exhibit 10.

20.     SEIU 503 records indicate Campbell signed an electronic SEIU 503 membership

application on October 18, 2017. A true and correct copy of that document is attached to the joint

stipulation as Exhibit 11.

21.     SEIU 503 records indicate Campbell signed another electronic SEIU 503

membership application on November 9, 2017. A true and correct copy of that document is

attached to the joint stipulation as Exhibit 12.

22.     Campbell's May 23, 2016, September 10, 2017, October 18, 2017, and November

9, 2017 membership applications each contain the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor
> entity) as my desired collective bargaining agent. I also hereby
> authorize my employer to deduct from my wages all Union dues
> and other fees or assessments as shall be certified by SEIU Local
> 503, OPEU (or any successor Union entity) and to remit those
> amounts to such Union. This authorization/delegation is
> unconditional, made in consideration for the cost of representation
> and other actions in my behalf by the Union and is made
> irrespective of my membership in the Union. This authorization is
> irrevocable for a period of one year from the date of execution and

> from year to year thereafter unless not less than thirty (30) and not
> more than forty-five (45) days prior to the end of any annual period
> or the termination of the contract between my employer and the
> Union, whichever occurs first, I notify the Union and my employer
> in writing, with my valid signature, of my desire to revoke this
> authorization. Union dues may be tax deductible as a work related
> expense subject to Federal and/or State tax rules.

No additional information was included to explain what "assessments" would be used for or to explain that an assessment would be used for political purposes. Neither SEIU 503 nor Campbell has any record of Campbell requesting such information or inquiring as to the purposes for which the assessments would be used.

23.    After executing the membership application, Campbell was treated as an SEIU 503 member and received the rights and benefits of membership.

24.    Campbell mailed SEIU 503 a letter dated October 26, 2018 resigning his union membership and objecting to the payment of any union dues or fees. SEIU 503 received that letter on November 1, 2018. A true and correct copy of that document is attached to the joint stipulation as Exhibit 13.

25.    SEIU 503 mailed Campbell a letter dated November 2, 2018 responding to Campbell's letter dated October 26, 2018  confirming that his resignation was deemed effective upon receipt of his letter. The letter also stated:

> We also wish to remind you that, under the terms of the dues
> checkoff authorization form you signed, dues deductions cannot be
> terminated except in the periods set forth in the authorization. (We
> have included a copy of your authorization for your reference).
> Accordingly, we shall hold the cancellation request on file until the
> first date cancellation would be appropriate. In your case, that date
> is September 29. At that point, the Union will take appropriate
> steps to have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 14.

26.    Membership dues, including but not limited to the Issues Fund assessment, continued to be deducted for Campbell for a period of time following his resignation of union membership and objection to the payment of any union dues or fees. Deductions for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs continued for Campbell until August 31, 2019. The final deduction for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs was made from the paycheck for the pay period ending August 31, 2019. A true and correct copy of a print-out from SEIU 503's internal records and files showing Campbell's dues history from his resignation of membership on November 1, 2018 through his last deduction of membership dues for the pay period ending September 30, 2019 is attached to the joint stipulation as Exhibit 15.

## PLAINTIFF KATHERINE MANGLONA

27.    Plaintiff Katherine Manglona is employed by the Oregon Department of Human Services in a bargaining unit represented by SEIU 503. FAC ¶43.

28.    Manglona signed an SEIU 503 membership application on July 10, 2015. A true and correct copy of that document is attached to the joint stipulation as Exhibit 16.

29.    Manglona signed an SEIU 503 membership application on July 30, 2015. A true and correct copy of that document is attached to the joint stipulation as Exhibit 17.

30.    Manglona signed an SEIU 503 membership application on August 16, 2017. A true and correct copy of that document is attached to the joint stipulation as Exhibit 18.

31.    Manglona's July 10, 2015, July 30, 2015, and August 16, 2017 membership applications each contain the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor
> entity) as my desired collective bargaining agent. I also hereby
> authorize my employer to deduct from my wages all Union dues
> and other fees or assessments as shall be certified by SEIU Local

> 503, OPEU (or any successor Union entity) and to remit those
> amounts to such Union. This authorization/delegation is
> unconditional, made in consideration for the cost of representation
> and other actions in my behalf by the Union and is made
> irrespective of my membership in the Union. This authorization is
> irrevocable for a period of one year from the date of execution and
> from year to year thereafter unless not less than thirty (30) and not
> more than forty-five (45) days prior to the end of any annual period
> or the termination of the contract between my employer and the
> Union, whichever occurs first, I notify the Union and my employer
> in writing, with my valid signature, of my desire to revoke this
> authorization.

No additional information was included to explain what "assessments" would be used for or to

explain that an assessment would be used for political purposes. Neither SEIU 503 nor Manglona

has any record of Manglona requesting such information or inquiring as to the purposes for

which the assessments would be used.

     32.     After signing the first membership application, Manglona was treated as an SEIU

503 member and received the rights and benefits of membership.

     33.     Manglona mailed SEIU 503 an undated letter resigning her union membership

and objecting to the payment of any union dues or fees. SEIU 503 received that letter on August

20, 2018. A true and correct copy of that document is attached to the joint stipulation as Exhibit

19.

     34.     SEIU 503 mailed Manglona a letter dated August 30, 2018 responding to her

August 20, 2018 letter confirming that her resignation was deemed effective upon receipt of her

letter. The letter also stated:

> We also wish to remind you that, under the terms of the dues
> checkoff authorization form you signed, dues deductions cannot be
> terminated except in the periods set forth in the authorization. (We
> have included a copy of your authorization for your reference).
> Accordingly, we shall hold the cancellation request on file until the
> first date cancellation would be appropriate. In your case, that date

is July 2. At that point, the Union will take appropriate steps to
have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 20.

35.     Membership dues, including but not limited to assessments, continued to be
deducted for Manglona for a period of time following her resignation of union membership,
pursuant to the terms of her membership application. Deductions for the $2.75 assessment listed
as "SEIU ISSUES" on employee paystubs, continued for Manglona until July 1, 2019. The final
deduction was made from the paycheck for the pay period ending June 30, 2019. A true and
correct copy of a print-out from SEIU 503's records and files showing Manglona's dues history
from September 2018 through her last deduction for the pay period ending June 30, 2019 is
attached to the joint stipulation as Exhibit 21.

### PLAINTIFF DEANNE MURFIN

36.     Plaintiff Deanne Murfin is employed by the Oregon Department of Human
Services in a bargaining unit represented by SEIU 503. FAC ¶48.

37.     Murfin signed an SEIU 503 membership application on April 17, 2019. The
membership application contains the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor
> entity) as my desired collective bargaining agent. I also hereby
> authorize my employer to deduct from my wages all Union dues
> and other fees or assessments as shall be certified by SEIU Local
> 503, OPEU (or any successor Union entity) and to remit those
> amounts to such Union. This authorization/delegation is
> unconditional, made in consideration for the cost of representation
> and other actions in my behalf by the Union and is made
> irrespective of my membership in the Union. This authorization is
> irrevocable for a period of one year from the date of execution and
> from year to year thereafter unless not less than thirty (30) and not
> more than forty-five (45) days prior to the end of any annual period
> or the termination of the contract between my employer and the
> Union, whichever occurs first, I notify the Union and my employer
> in writing, with my valid signature, of my desire to revoke this

authorization. Union dues may be tax deductible as a work related
expense subject to Federal and/or State tax rules.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 22.

No additional information was included to explain what "assessments" would be used for or to

explain that an assessment would be used for political purposes. Neither SEIU 503 nor Murfin

has any record of Murfin requesting such information or inquiring as to the purposes for which

the assessments would be used.

38.     After executing the membership application, Murfin was treated as an SEIU 503

member and received the rights and benefits of membership.

39.     Approximately two months later, Murfin mailed SEIU 503 a letter dated June 25,

2019 resigning her union membership and objecting to the payment of any union dues or fees.

SEIU 503 received that letter on July 1, 2019. A true and correct copy of that document is

attached to the joint stipulation as Exhibit 23.

40.     SEIU 503 mailed Murfin a letter dated July 2, 2019 responding to her letter dated

June 25, 2019 confirming that her resignation was deemed effective upon receipt of her letter.

The letter also stated:

> We also wish to remind you that, under the terms of the dues
> checkoff authorization form you signed, dues deductions cannot be
> terminated except in the periods set forth in the authorization. (We
> have included a copy of your authorization for your reference).
> Accordingly, we shall hold the cancellation request on file until the
> first date cancellation would be appropriate. In your case, that date
> is March 3, 2020. At that point, the Union will take appropriate
> steps to have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 24.

41.     Membership dues, including but not limited to assessments, continued to be

deducted for Murfin for a period of time following her resignation of union membership,

pursuant to the terms of his membership application. Deductions for the $2.75 assessment listed

as "SEIU ISSUES" on employee paystubs continued for Murfin until February 28, 2020. The

final deduction for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs was

made from the paycheck for the pay period ending February 29, 2020. A true and correct copy of

a print-out from SEIU 503's records and files showing Murfin's dues history from her

resignation of membership on July 1, 2019 through her last deduction for the pay period ending

February 29, 2020, is attached to the joint stipulation as Exhibit 25.

### PLAINTIFF CORI STEPHENS

42.    Plaintiff Cori Stephens is employed by the Oregon Health Authority in a

bargaining unit represented by SEIU 503. FAC ¶52.

43.    Stephens signed an SEIU 503 membership application on August 23, 2017. The

membership application contains the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor
> entity) as my desired collective bargaining agent. I also hereby
> authorize my employer to deduct from my wages all Union dues
> and other fees or assessments as shall be certified by SEIU Local
> 503, OPEU (or any successor Union entity) and to remit those
> amounts to such Union. This authorization/delegation is
> unconditional, made in consideration for the cost of representation
> and other actions in my behalf by the Union and is made
> irrespective of my membership in the Union. This authorization is
> irrevocable for a period of one year from the date of execution and
> from year to year thereafter unless not less than thirty (30) and not
> more than forty-five (45) days prior to the end of any annual period
> or the termination of the contract between my employer and the
> Union, whichever occurs first, I notify the Union and my employer
> in writing, with my valid signature, of my desire to revoke this
> authorization. Union dues may be tax deductible as a work related
> expense subject to Federal and/or State tax rules.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 26.

No additional information was included to explain what "assessments" would be used for or to

explain that an assessment would be used for political purposes. Neither SEIU 503 nor Stephens

has any record of Stephens requesting such information or inquiring as to the purposes for which

the assessments would be used.

44.     After executing the membership application, Stephens was treated as an SEIU 503

member and received the rights and benefits of membership.

45.     Stephens mailed SEIU 503 a letter dated August 1, 2018 resigning her union

membership. SEIU 503 received that letter on August 2, 2018. A true and correct copy of that

document is attached to the joint stipulation as Exhibit 27.

46.     SEIU 503 mailed Stephens a letter dated August 3, 2018 responding to her

resignation of membership and confirming that her resignation was deemed effective upon

receipt of her letter. The letter also stated:

> We also wish to remind you that, under the terms of the dues
> checkoff authorization form you signed, dues deductions cannot be
> terminated except in the periods set forth in the authorization. (We
> have included a copy of your authorization for your reference).
> Accordingly, we shall hold the cancellation request on file until the
> first date cancellation would be appropriate. In your case, that date
> is July 9. At that point, the Union will take appropriate steps to
> have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 28.

47.     Membership dues, including but not limited to assessments, continued to be

deducted for Stephens for a period of time following her resignation of union membership,

pursuant to the terms of her membership application. Deductions for the $2.75 assessment listed

as "SEIU ISSUES" on employee paystubs, continued for Stephens until July 1, 2019. The final

deduction was made from the paycheck for the pay period ending June 30, 2019. A true and

correct copy of a print-out from SEIU 503's records and files showing Stephens' dues history

from her resignation of membership on August 2, 2018 through her last deduction for the pay period ending June 30, 2019, is attached to the joint stipulation as Exhibit 29.

### PLAINTIFF KATHLEEN TRYON

48.     Plaintiff Kathleen Tryon is employed by the Oregon Office of Administrative Hearings in a bargaining unit represented by SEIU 503. FAC ¶57.

49.     Tryon signed an SEIU 503 membership application on August 18, 2015. A true and correct copy of that document is attached to the joint stipulation as Exhibit 30.

50.     Tryon signed an SEIU 503 membership application on August 19, 2017. A true and correct copy of that document is attached to the joint stipulation as Exhibit 31.

51.     Tryon's August 18, 2015 and August 19, 2017 membership applications each contain the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor entity) as my desired collective bargaining agent. I also hereby authorize my employer to deduct from my wages all Union dues and other fees or assessments as shall be certified by SEIU Local 503, OPEU (or any successor Union entity) and to remit those amounts to such Union. This authorization/delegation is unconditional, made in consideration for the cost of representation and other actions in my behalf by the Union and is made irrespective of my membership in the Union. This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter unless not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to revoke this authorization.

No additional information was included to explain what "assessments" would be used for or to explain that an assessment would be used for political purposes. Neither SEIU 503 nor Tryon has any record of Tryon requesting such information or inquiring as to the purposes for which the assessments would be used.

52.    After executing the membership application, Tryon was treated as an SEIU 503 member and received the rights and benefits of membership.

53.    Tryon mailed SEIU 503 a form dated October 16, 2018 resigning her union membership. SEIU 503 received that letter on or about October 29, 2018. A true and correct copy of that document is attached to the joint stipulation as Exhibit 32.

54.    SEIU 503 mailed Tryon a letter dated November 2, 2018 responding to her resignation of membership and confirming that her resignation was deemed effective upon receipt of her letter. The letter also stated:

> We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization. (We have included a copy of your authorization for your reference). Accordingly, we shall hold the cancellation request on file until the first date cancellation would be appropriate. In your case, that date is July 5. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 33.

55.    Membership dues, including but not limited to assessments, continued to be deducted for Tryon for a period of time following her resignation of union membership, pursuant to the terms of her membership application. Deductions for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs, continued for Tryon until July 1, 2019. The final deduction was made from the paycheck for the pay period ending June 30, 2019. A true and correct copy of a print-out from SEIU 503's records and files showing Tryon's dues history from her resignation of membership on October 16, 2018 through her last deduction for the pay period ending June 30, 2019 is attached to the joint stipulation as Exhibit 34.

**PLAINTIFF ERICA DRAKE**

56.    Plaintiff Erica Drake is employed by the Oregon Department of Human Services in a bargaining unit represented by SEIU 503. FAC ¶ 11, 38.

57.    Drake signed an SEIU 503 membership application on November 11, 2015. That membership application contains the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor entity) as my desired collective bargaining agent. I also hereby authorize my employer to deduct from my wages all Union dues and other fees or assessments as shall be certified by SEIU Local 503, OPEU (or any successor Union entity) and to remit those amounts to such Union. This authorization/delegation is unconditional, made in consideration for the cost of representation and other actions in my behalf by the Union and is made irrespective of my membership in the Union. This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter unless not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to revoke this authorization.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 35. No additional information was included to explain what "assessments" would be used for or to explain that an assessment would be used for political purposes. Neither SEIU 503 nor Drake has any record of Drake requesting such information or inquiring as to the purposes for which the assessments would be used.

58.    After executing the membership application, Drake was treated as an SEIU 503 member and received the rights and benefits of membership.

59.    In November 2020, Drake mailed SEIU 503 a letter resigning her union membership. SEIU 503 received that letter on November 25, 2020. A true and correct copy of that document is attached to the joint stipulation as Exhibit 36.

60.     SEIU 503 mailed Drake a letter dated December 11, 2020 responding to her resignation of membership and confirming that her resignation was deemed effective upon receipt of her letter. The letter also stated:

> We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization. (We have included a copy of your authorization for your reference). Accordingly, we shall hold the cancellation request on file until the first date cancellation would be appropriate. In your case, that date is September 27, 2021. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 37.

61.     Membership dues, including but not limited to assessments, continue to be deducted for Drake following her resignation of union membership, pursuant to the terms of her membership application. Deductions for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs, will continue for Drake until September 2021. A true and correct copy of a print-out from SEIU 503's records and files showing Drake's dues history from her resignation of membership in November 2020 through her deduction for the pay period ending April 30, 2021, is attached to the joint stipulation as Exhibit 38.

### PLAINTIFF RYAN CRAM

62.     Plaintiff Ryan Cram is employed by the Oregon Department of Transportation in a bargaining unit represented by SEIU 503. FAC ¶ 34.

63.     Cram signed an SEIU 503 membership application on April 3, 2018. The membership application contains the following payroll deduction authorization:

> I hereby designate SEIU Local 503, OPEU (or any successor entity) as my desired collective bargaining agent. I also hereby authorize my employer to deduct from my wages all Union dues and other fees or assessments as shall be certified by SEIU Local 503, OPEU (or any successor Union entity) and to remit those

amounts to such Union. This authorization/delegation is unconditional, made in consideration for the cost of representation and other actions in my behalf by the Union and is made irrespective of my membership in the Union. This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter unless not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to revoke this authorization. Union dues may be tax deductible as a work related expense subject to Federal and/or State tax rules.

A true and correct copy of that document is attached to the joint stipulation as Exhibit 39.

64.    No additional information was included to explain what "assessment" would be used for or to explain that an assessment would be used for political purposes. Cram requested information regarding the SEIU Issues assessment in June 2018. A true and correct copy of his correspondence with SEIU 503 counsel Marc Stefan is attached to the joint stipulation as Exhibit 40.

65.    After executing the membership application, Cram was treated as an SEIU 503 member and received the rights and benefits of membership.

66.    Four months after joining the union, Cram provided SEIU 503 a letter dated August 17, 2018 resigning his union membership. SEIU 503 received that letter on August 17, 2018. A true and correct copy of that document is attached to the joint stipulation as Exhibit 41.

67.    SEIU 503 sent Cram an email on August 28, 2018, responding to his resignation of membership and confirming that his resignation was deemed effective upon receipt of his letter. The email also stated, "Additionally, your public employer has been notified to cease further deductions of dues from your wages going forward. Dues that were withheld by your employer for the period from August 17 through the end of August 2018 will be refunded to you

by the Union." A true and correct copy of that document is attached to the joint stipulation as Exhibit 42.

68.    Dues deductions, including for the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs, were made from Cram's paychecks for the months of April 2018 through September 2018. A true and correct copy of a print-out from SEIU 503's records and files showing Cram's dues history for 2018 is attached to the joint stipulation as Exhibit 43.

69.    Payroll deductions for union dues, including the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs, ceased after Cram resigned his union membership. The final payroll deduction from Cram's wages was made on October 1, 2018, from the paycheck for the pay period ending September 30, 2018. Id. On November 1, 2018, SEIU 503 issued Cram a full refund for the union dues deducted from his September 2018 paycheck, including the $2.75 assessment listed as "SEIU ISSUES" on employee paystubs. Id. No dues or assessments were deducted from Cram's paychecks after September 2018. Id.

70.    Apart from the facts set forth in [the parties'] stipulation, neither Plaintiffs nor SEIU 503 contend that additional facts exist now that make the terms of the member-Plaintiffs membership applications, including the dues deduction authorizations set forth therein, enforceable or unenforceable.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is

such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

SEIU moves for summary judgment on Plaintiffs' claims against the union, arguing that the claims fail as a matter of law because Plaintiffs cannot establish that SEIU was a state actor under controlling Ninth Circuit case law. SEIU Mot. Summ. J. 9–12, ECF No. 47 ("SEIU Mot."). SEIU also argues Plaintiffs' claims fail as a matter of law because deducting union assessments under a voluntary authorization does not violate the First Amendment. *Id.* at 12–20.[2] Plaintiffs disagree and assert that SEIU is a state actor. Pls.' Mot. Summ. J. 13–23, ECF No. 44 ("Pls.' Mot."). Plaintiffs also assert their First Amendment rights were violated because SEIU takes money from employees for "expression of political views" without notice or adequate consent. *Id.* at 4–13.

---

[2] Because State Defendant has joined SEIU's motion for summary judgment, unless otherwise noted, the Court considers the arguments together. *See* Director Coba Mot. Summ. J. 2 ("Director Coba hereby joins in and incorporates by reference SEIU Local 503's Cross-Motion for Summary Judgment and Memorandum of Points and Authorities in Support thereof and in Opposition to Plaintiffs' Motion for Summary Judgment."), ECF No. 50.

I.      **State Action**

Plaintiffs argue that the Oregon Department of Administrative Services ("DAS")

collection of the political assessment from Plaintiffs' paychecks at the direction of the SEIU

establishes state action sufficient to confer liability under 42 U.S.C. § 1983. Pls.' Mot. 13–23.

SEIU, on the other hand, asserts that this case is indistinguishable from *Belgau v. Inslee*, 975

F.3d 940, 946 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2795 (2021), where "[t]he gist of [the

plaintiffs'] claim against the union [was] that it acted in concert with the state by authorizing

deductions without proper consent in violation of the First Amendment." And that, as in *Belgau*,

"[t]he fallacy of this approach is that it assumes state action sufficient to invoke a constitutional

analysis." *Id.*

SEIU's argument is well taken. The Court finds that *Belgau's* analysis on state action is

controlling. There, the plaintiffs worked as public-sector employees who signed union

membership agreements authorizing Washington State to deduct dues from their wages and pay

them to a union. *Id.* at 945. After the Supreme Court held in *Janus* that compelling nonmembers

to subsidize union speech violated the First Amendment, the plaintiffs notified the union that

they no longer wanted to be union members or pay dues. *Id.* at 945–46. The union thereafter

terminated the plaintiffs' union memberships. *Id.* at 946. However, the union continued to deduct

union dues from their pay until an irrevocable one-year term expired based on the terms of the

membership agreements. *Id.*

The plaintiffs brought a putative class action against the Washington Governor, several

state agency directors, and the union, alleging that the dues deductions violated, among other

things, their First Amendment rights. *Id.*; *see also Jarrett v. Marion Cty.*, No. 6:20-cv-01049-

MK, 2021 WL 65493, at *2 (D. Or. Jan. 6, 2021) (discussing *Janus*), *adopted*, 2021 WL 233116

(D. Or. Jan. 22, 2021). Ultimately, *Belgau* held that the plaintiffs' claims failed because they could not establish the threshold requirement that the union was a "state actor." 975 F.3d at 944.

      *Belgau* explained that to establish a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant "deprived them of a right secured by the Constitution and acted 'under color of state law.'" *Id.* at 946 (quoting *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989)). The court noted that Supreme Court precedent instructs that "merely private conduct, however discriminatory or wrongful," falls outside the purview of the Fourteenth Amendment. *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). The court began its state action inquiry by asking whether "the challenged conduct that caused the alleged constitutional deprivation [is] 'fairly attributable' to the state?" *Id.* (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013)). To answer that question, courts:

> employ a two-prong inquiry to analyze whether [the state's] "involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which plaintiff complains." *Ohno*, 723 F.3d at 994; *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (two-prong test).

*Belgau*, 975 F.3d at 946.

      The first prong looks to "whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.'" *Id.* (quoting *Ohno*, 723 F.3d at 994).

      The second prong looks to "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* (citing *Ohno*, 723 F.3d at 994). The Supreme Court has articulated four tests to determine whether a non-governmental person's actions amount to state action: (1) the joint action test; (2) the public function test; (3) the governmental nexus test;

and (4) the state compulsion test. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted).

Plaintiffs cannot establish either prong. First, as in *Belgau*, Plaintiffs "do not generally contest the state's authority to deduct dues according to a private agreement." 975 F.3d at 946–47. Instead, Plaintiffs' "claimed constitutional harm is that the agreements were signed without a constitutional waiver of rights." *Id.* at 947. *Belgau* makes clear that such private agreements are not sufficient to establish state action. *Id.* ("Thus, the 'source of the alleged constitutional harm' is not a state statute or policy but the particular private agreement between the union and Employees.") (quoting *Ohno*, 723 F.3d at 994).

Second, although Plaintiffs assert that SEIU is a joint actor with DAS based on the collective bargaining agreement and Oregon's statutory scheme authorizing the assessment, Pls.' Mot. 16–18, as in *Belgau*, "[a]s a private party, the union is generally not bound by the First Amendment, unless it has acted 'in concert' with the state 'in effecting a particular deprivation of [a] constitutional right[.]'" *Id.* (citations omitted). Given the manner in which Plaintiffs' initially consented to the assessment, there is no evidence that "state officials and [the union] acted in concert in effecting a particular deprivation of constitutional rights.'" *Ohno*, 723 F.3d at 996; *see also Belgau*, 975 F.3d at 948 ("A merely contractual relationship between the government and the non-governmental party does not support joint action; there must be a 'symbiotic relationship' of mutual benefit and 'substantial degree of cooperative action.'") (citation omitted).

Plaintiffs' claims fare no better under the public function test, which "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government." *Ohno*, 723 F.3d at 996. Plaintiffs assert that SEIU engages in a public function

Page 24 — OPINION AND ORDER

"because directing government wage payments and deductions is a public function." Pls.' Mot.

18. However, as the Ninth Circuit explained in *Belgau*, more is required to establish state action:

> At best, [the state's] role in the allegedly unconstitutional conduct was ministerial processing of payroll deductions pursuant to Employees' authorizations. But providing a "machinery" for implementing the private agreement by performing an administrative task does not render [the state] and [the union] joint actors. Much more is required; the state must have "so significantly encourage[d] the private activity as to make the State responsible for" the allegedly unconstitutional conduct.

*Belgau*, 975 F.3d at 948.[3]

Finally, Plaintiffs assert that SEIU is a state actor because it exercised the coercive power of the State. Pls.' Mot. 21–23. That argument, however, is also foreclosed by *Belgau*, which held that "[t]he state's role [in that case] was to permit the private choice of the parties, a role that is neither significant nor coercive" in nearly identical circumstances. *Belgau*, 975 F.3d at 947. (citations omitted). As the court explained, a "private party cannot be treated like a state actor where the government's involvement was only to provide 'mere approval or acquiescence,' 'subtle encouragement,' or 'permission of private choice.'" *Id.* (citations omitted).

In sum, the Court concludes that SEIU was not a state actor. Accordingly, SEIU's motion for summary judgment is granted; Plaintiffs' motion for summary judgment on state action is denied.

---

[3] For similar reasons, Plaintiffs' assertion that SEIU's participation with DAS created a governmental nexus fails. Pls.' Mot. 19–21; *see also Ohno*, 723 F.3d at 996 n.16 (explaining that public function and joint action tests "largely subsume the state compulsion and governmental nexus tests, because they address the degree to which the state is intertwined with the private actor or action").

## II.    First Amendment

Plaintiffs argue that *Janus* requires a heightened waiver of their First Amendment rights and argue Defendants cannot deduct assessments absent "clear and compelling evidence that the employees waived their First Amendment right not to support the political speech." Pls.' Mot. 8 (citing *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463–64 (2018). *Belgau*, however, squarely rejected a heightened "clear and compelling" waiver argument that Plaintiffs advance here. *Belgau*, 975 F.3d at 951–52 ("In arguing that *Janus* requires constitutional waivers before union dues are deducted, Employees seize on a passage requiring any waiver of the First Amendment right to be 'freely given and shown by 'clear and compelling' evidence.' This approach misconstrues *Janus*.") (citation omitted). Instead, the court explained that:

> The First Amendment does not support Employees' right to renege on their promise to join and support the union. This promise was made in the context of a contractual relationship between the union and its employees. When "legal obligations . . . are self-imposed," state law, not the First Amendment, normally governs. Nor does the First Amendment provide a right to "disregard promises that would otherwise be enforced under state law."

*Id.* at 950 (citations omitted).

Ultimately, the Ninth Circuit "join[ed] the swelling chorus of courts recognizing that *Janus* does not extend a First Amendment right to avoid paying union [financial obligations]," and held that "'*Janus* does not preclude enforcement of union membership and [payroll] deduction authorization agreements.'" *Belgau*, 975 F.3d at 951 & n.5 (quoting *Mendez v. Cal. Teachers Ass'n*, 419 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020)); *see also Durst v. Oregon Educ. Ass'n*, 450 F. Supp. 3d 1085, 1091 (D. Or. 2020) ("This Court joins every other court to consider the issue in concluding that *Janus* is inapplicable to situations where an employee chooses to join

a union, authorizes dues deductions over an entire academic year, receives union benefits not available to nonmembers, and then later attempts to cancel deductions outside of the opt-out period they earlier agreed to."), *aff'd*, 854 F. App'x 916 (9th Cir. 2021), *cert. denied sub nom. Anderson v. Serv. Emps. Int'l Union Loc. 503*, 142 S. Ct. 764 (2022). That same reasoning applies with equal force here.

There is no dispute that each individual Plaintiff voluntarily joined SEIU and signed membership agreements that included payroll deduction authorization agreements:

> I hereby designate SEIU Local 503, OPEU (or any successor entity) as my desired collective bargaining agent. *I also hereby authorize my employer to deduct from my wages all Union dues and other fees or assessments* as shall be certified by SEIU Local 503, OPEU (or any successor Union entity) and to remit those amounts to such Union. This authorization/delegation is unconditional, made in consideration for the cost of representation and other actions in my behalf by the Union and is made irrespective of my membership in the Union. *This authorization is irrevocable for a period of one year from the date of execution . . . .*

*See, e.g.*, Background ¶ 11 (emphasis added); *see also id.* ¶¶18–21, 28–30, 37, 43, 49–50, 57, 63. The membership agreements at issue here, as in *Belgau*, thus expressly authorized collection of the assessment, were voluntarily entered into by each individual Plaintiff, and were binding on Plaintiffs until they resigned memberships. "This choice to voluntarily join a union and the choice to resign from it are contrary to compelled speech." *Belgau*, 975 F.3d at 951.[4] As such, the Court concludes that the membership agreements signed by Plaintiffs and the collection of the assessments did not violate the First Amendment. *Belgau*, 975 F.3d at 952 ("In the face of

---

[4] Plaintiffs' attempt to distinguish *Belgau* because that case authorized deduction of union *dues*, as opposed to the *assessments* at issue here, is a distinction with no meaningful difference. Both dues and assessments constitute financial support contractually owed to SEIU by union members.

their voluntary agreement to pay union dues and in the absence of any legitimate claim of
compulsion, the district court appropriately dismissed the First Amendment claim against
Washington.").[5]

Plaintiffs also assert they "had no information that would have allowed them to decide
whether to fund the political fund through the political assessment" because "[t]his information
was not included in the membership card, and [the Union] provides no other source by which the
[Plaintiffs] would have obtained the information prior to becoming members." Pls' Mot. 11; *see
also id.* at 3–4.

The Ninth Circuit has held, however, that "[a] party who signs a written agreement is
bound by its terms, even though the party neither reads the agreement nor considers the legal
consequences of signing it." *Emp. Painters' Tr. v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir.
1996) (citation omitted); *see also id.* ("Parties to a collective bargaining agreement are
conclusively presumed to have equal bargaining power[.]") (citation omitted). Plaintiffs could
have declined to sign the membership agreements or asked for more information before agreeing
to the assessment.[6] That they did not is no reason to excuse Plaintiffs from the agreements into
which they voluntarily entered. *Belgau*, 975 F.3d at 950 ("The First Amendment does not

---

[5] Plaintiffs' reliance on *Knox v. Ser. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012) is
misplaced. *Knox* dealt with the procedures unions must follow to collect a special assessment
from *nonmembers. Id.* at 315. Although Plaintiffs assert they are *nonmembers*, they were union
members until they resigned their memberships. Put differently, to the extent Plaintiffs are
presently nonmembers, they are nonmembers who, while they were union members, expressly
authorized the assessment at issue. *Knox* is thus inapposite. Plaintiffs' reliance on *Chicago
Teachers Union, Loc. No. 1 v. Hudson*, 475 U.S. 292 (1986) fails for the same reason.

[6] Other than Plaintiff Cram, there is no evidence Plaintiffs requested information about the
assessments' purpose. *See* Background ¶¶ 11, 22, 31, 37, 43, 51, 57. Plaintiff Cram signed the
membership application authorizing deductions for union dues in April 2018 and "requested
information regarding the SEIU Issue assessment in June 2018." Background ¶ 64.

support Employees' right to renege on their promise to join and support the union. This promise was made in the context of a contractual relationship between the union and its employees.").

At bottom, there "is an easy remedy for [ ]  public employees who do not want to be part of the union: they can decide not to join the union in the first place, or they can resign their union membership after joining." *Belgau*, 975 F.3d at 952.

In sum, the Court concludes that Plaintiffs' First Amendment claims fail as a matter of law because Plaintiffs voluntarily authorized the collection of the assessment. Accordingly, SEIU's and Director Coba's motion for summary judgment is granted; Plaintiffs' motion for summary judgment is denied.

## CONCLUSION

For the reasons above, SEIU's motion for summary judgment (ECF No. 47) and Director Coba's motion for summary judgment (ECF No. 50) are GRANTED. Plaintiffs' motion for summary judgment (ECF No. 44) is DENIED.

DATED this 11th day of March 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
